THE HILL ROAD PUBLISHING AND NEWS COMPANY, INC. *vs.* PUBLIC UTILITY HEARING BOARD.

MAY 16, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This petition was filed with the public utility administrator pursuant to G. L. 1956, §39-4-3, praying that the New England Telephone and Telegraph Company, hereinafter referred to as New England, be ordered to provide certain telephone service specified therein to the petitioner. After a hearing thereon the administrator entered an order on February 27, 1962 denying and dismissing the petition

and ordering New England to terminate all telephone service then being furnished to the petitioner.

The petitioner appealed therefrom to the public utility hearing board under the provisions of G. L. 1956, §39-5-9. After a hearing de novo, the hearing board entered its order denying and dismissing the petition for additional service and, in substance, directed the attention of New England to the obligations imposed upon it under pertinent provisions of its tariff. From this order of the hearing board petitioner has taken an appeal to this court under the provisions of §39-5-14.

It appears from the evidence that petitioner is a Rhode Island corporation engaged in the business of disseminating news and information concerning athletic contests, sports events, and horse racing; that it publishes weekly a mimeographed pamphlet which contains comprehensive reports of past and future events; and that its circulation of from 300 to 500 copies is sold primarily through newsstands at 40 cents a copy. It also appears that there is published in this magazine a "code word," so called, and that subscribers, by calling petitioner's office and using the current code word as identification, may obtain information concerning the results of such sporting events without charge.

Evidence adduced in petitioner's behalf discloses that at the time of the filing of the instant petition it was being provided with telephone service by New England which included three private telephone lines installed in an office at its place of business. It is not disputed that petitioner receives from two to five hundred incoming calls a day on these lines between the hours of 12:30 p.m. and 6:30 p.m., Sundays excepted. These calls are made by persons seeking information pertaining to the conduct of horse-racing activities at tracks throughout the country. Primarily they are requests for information concerning races to be run at such tracks subsequent to the time the call was made. It

is not disputed that these calls are for information relating to the winners of recent races, the price of the winning horses therein, the amounts paid on daily double wagers, the post time of races to be run subsequently during the day, and the "scratching," so called, of horses in races still to be run. It is also undisputed that New England maintains in petitioner's office a pay telephone, so called, which is used to make prepaid calls at intervals of approximately fifteen to twenty minutes during the day to obtain information concerning the results of particular horse races within a period of four minutes after that race has been completed.

There is in the record also a considerable amount of evidence adduced through members of the state and local police departments and through an investigator employed by New England. The testimony of these witnesses was based upon their observations of the activities being carried on by petitioner in conducting its business. They testified, in substance, that the activities were to supply bookmakers with essential information and were so conducted as to be integrated into the operation of bookmakers during those times when horse races actually were being run.

The board concluded that petitioner was engaged in providing information concerning horse racing which was of such nature as to enable bookmakers to conduct their gambling activities and that the publication and distribution of the pamphlet of petitioner was a mere sham designed to conceal the real function of petitioner, that is, the dissemination of the results of horse races so as to aid bookmakers in the conduct of their activities for fees which are not disclosed in the corporate records. The board further stated that it found that petitioner was making illegal use of its existing telephone service and that by virtue of the pertinent provisions of its own tariff New England would be justified in refusing to furnish the additional service requested and in terminating such service as was then being

provided. We are of the opinion that the decision of the board, when read in its entirety, reveals findings that the operations of petitioner were integrated into the activities of bookmakers for the purpose of supplying them with information essential to the conduct of that form of gambling, this being done under the guise of the operation of a news dissemination service.

The petitioner contends, first, that error inheres in the decision of the hearing board because its effect is to deny service to one legitimately engaging in the business of disseminating information concerning sports events and justifying such denial on the ground that the service is susceptible of being used by the recipients thereof in illegal enterprises. The generally accepted rule is that a utility may not justifiably deny service to a legitimate business enterprise solely upon the ground that it may be used in some illegal activity. *Paterson Publishing Co.* v. *New Jersey Bell Telephone Co.*, 21 N. J. 460. The petitioner is clearly challenging the validity of the finding of the hearing board that petitioner is conducting its business for the purpose of providing bookmakers with information essential to the operation of their illegal activities, a finding exclusory of any aspect of legitimacy in that business. This contention raises the question of whether the decision is contrary to the weight of the evidence.

The authority of this court to reverse an order of the hearing board on an appeal taken pursuant to §39-5-14 is prescribed therein as follows: "On any appeal under the provisions of this section, the findings of the board on questions of fact shall be held prima facie to be true and as found by the board; and an order of the board shall not be reversed unless it appears that the decision of the board was against the weight of the evidence presented before the board * * *." It is our opinion that under this statute an appellant who seeks to obtain a reversal of an order of the

board on the ground that it is contrary to the weight of the evidence has the burden of establishing that there is in the record some material evidence that the board either overlooked or misconceived and which, had it been properly assessed by the board, would have caused the evidence to preponderate against the decision.

In other words, where there is an evidentiary basis for the decision of the hearing board this court is barred from any re-evaluation of the evidence and reaching a conclusion contrary to that of the hearing board. It becomes the duty of this court to reverse the order only when the record discloses that had evidence adduced in the course of the hearing been properly considered it would have preponderated against the decision. The petitioner has attacked vigorously the weight of the conflicting evidence in this record that relates to the purposes for which petitioner was conducting its business. We do not perceive, however, that petitioner has directed our attention to any item of material evidence that the hearing board either misconceived or overlooked in reaching its decision.

The findings of fact made by the hearing board, when interpreted favorably to petitioner, conclude, in substance, that it was conducting its news service as an integral part of an illegal activity. To this view petitioner argues that, conceding the use of its news service by the recipients thereof in illegal activities, such use by others does not constitute a sufficient justification for the denial by New England of the additional telephone service requested. This argument has been answered most appropriately in *Howard Sports Daily, Inc.* v. *Public Service Comm'n,* 179 Md. 355, 359, where the court said: "It was insisted that the transmission of sports news does not violate any law of the State merely because a recipient of it puts it to illegal use * * *. But it is well settled that a telegraph company has the right to refuse service which is connected with illegal operations.

The company may refuse to render such service, not only where such action would subject it to prosecution as a participant in the illegality, but also where it would have the effect of promoting illegality * * *."

The rule as declared by the Maryland court, in our opinion, is entirely rational and meritorious. Its effect is to allow a utility in an appropriate case to refuse to conduct its business in a twilight zone of legality. This tendency on the part of utilities to thus practice a sort of commercial fastidiousness should not be discouraged on the part of regulatory agencies by resorting to fine distinctions between an unlawful use of such service and the susceptibility of such service to use in an unlawful activity. The rule as stated by the Maryland court has the further merit of permitting hearing boards to determine appeals from denials by utilities of service in these cases free from any judicially imposed naivete. In the instant case there is evidence probative of a purpose on the part of petitioner to carry on its business in such a manner as to provide bookmakers with information essential to the conduct of their activities. The board so found and on the basis of the finding did not err in denying and dismissing petitioner's appeal from the action of New England denying that service.

We cannot agree with the contention of petitioner that the instant case is factually similar to *Pennsylvania Publications, Inc.* v. *Pennsylvania Public Utility Comm'n,* 349 Pa. 184, and that we likewise should conclude that there is in the record here no evidence establishing that the distribution of news in fact aided and assisted an illegal activity. The Pennsylvania case, when viewed in its factual aspect, appears to have been decided on the basis of a failure on the part of the utility to meet the burden of proof required to justify its denial of service. As the court said in that case at page 191, "Here there is absolutely no evidence to indicate that appellant was engaged in an unlawful enterprise. All that was here shown was that some re-

cipients of the news distributed by appellant used or may have used it for an unlawful purpose." Thus, the factual situation therein was substantially different from that in the instant case, the hearing board here having found that petitioner was engaged in the dissemination of news for the purpose of furnishing bookmakers with information essential to the conduct of their illegal activities. Because we take this view we find no merit in petitioner's contention that the decision of the hearing board was contrary to the weight of the evidence.

It is the further contention of petitioner that the hearing board was without authority to make any order involving the telephone service New England was providing to petitioner at the time of its application for additional service. The petitioner asserts that the decision ordering New England to terminate the existing service is in excess of the board's jurisdiction. In other words, petitioner is arguing that the appeal taken by it from the order of the administrator to the hearing board pursuant to §39-5-9 brought before the hearing board only the question of its right to additional telephone service and that therefore the board was without jurisdiction in this particular appellate proceeding to hear and determine any question as to its right to a continuance of the existing service.

Whatever might be the operative effect of the appeal taken by petitioner with respect to the jurisdiction of the hearing board, we are unable to agree that in its decision the hearing board did order New England to terminate petitioner's existing service. When closely scrutinized, that decision reveals no order on the part of the board to terminate the existing service but only language that clearly was intended to direct the attention of New England to the board's finding as to the unlawful use being made of the service provided petitioner, together with a reference to provisions contained in New England's tariff relating to such unlawful use. This reference is to a portion of the tariff that has

been filed by respondent which reads in pertinent part: "If the Telephone Company receives other evidence that such service is being or will be so used, it will either discontinue or deny the service or refer the matter to the appropriate law enforcement agency." It is to this provision of New England's tariff that the board referred when it directed New England's attention to its findings as to the purpose of petitioner's business.

The language of the order persuades us that the board exercised considerable caution to avoid therein acting in excess of its jurisdiction. We are unable to escape the conclusion that the board contemplated taking no action on its part with respect to the existing service but was recognizing only the obligation of New England to enforce the provisions of its own tariff. The infirmity of this phase of the order, if any, is its character as surplusage. Our conviction in this respect is strengthened by the fact that the provisions of that tariff require New England in an appropriate case to act pursuant to the alternatives set out therein. In such a situation it may act to terminate the service or it may refer such evidence to an appropriate law-enforcement agency. The order of the board can hardly be construed as directing New England to pursue either of these alternatives. In such circumstances we are constrained to conclude that we have before us no question as to action by the hearing board in excess of its jurisdiction.

The appeal of the petitioner is denied and dismissed, the order appealed from is affirmed, and the papers in the case are ordered returned to the public utility hearing board.

FROST, J., did not participate in the decision.

*James F. Murphy,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Francis A. Kelleher,* Special Counsel, for respondent.

*Tillinghast, Collins & Tanner, Richard F. Staples,* for New England Telephone and Telegraph Company.